Dissenting Opinion.
Egan, J.
The reports of the decisions of this court are full of cases where parol evidence has been received and considered to affect title to real estate where fraud or error are charged. Were it otherwise, the doctrines of the law and the provisions of the Code on the subject of the effect of fraud and error invalidating contracts may as weli be expunged, as those guilty of fraud seldom or never leave written evidence of the fraud behind them, and error can seldom be otherwise shown. See C. C. 1881 and 1882. The reason why the true character of a simulated or pretended conveyance of real property can not ordinarily be shown as between the parties otherwise than Joy a counter letter, is because such conveyances are usually made to effect some fraudulent purpose, such as to shield the property of a debtor from the pursuit of his creditors, and in such case another principle of law intervenes and the law leaves the parties to the fraudulent conveyance where it finds them. That this is so, is manifest, becaus’e even in the same case, without any specific provision of the law in exception of the rule requiring written evidence to affect title to real estate, the courts have always permitted creditors to avoid the fraudulent contract made to their prejudice, arid for this purpose, to introduce parol evidence. Indeed, it may be doubted if we are without positive warrant for this in the general provision of article 1848 of the C. C. as to how fraud may be proved— (i. e.) by simple or by conclusive presumptions, or by other evidence — a provision of the law which has been uniformly interpreted in all that class of cases to permit the reception of parol evidence of the fraud. So, also, in regard to the proof of error, see 15 L. 311, Robert vs. Boulat, 9 A. 29, in which case the defendant was allowed to prove by parol that he was the real and actual purchaser of real estate instead of another person, to whom the sheriff had, through mistake, made the deed, and in whose name it had stood for years on the record. I think that the doctrine is as much consecrated in our law as in any other system that “ uberrima fieles” is required -of agents acting for others, and that they can not profit by their own fraud to appropriate either the money or the property of their principals; see Newton vs. York, 13 A. 18. To permit this would be to offer a premium for fraud and dishonesty. There is no propriety in applying to such cases the provision of the C. C. requiring a *903 power of attorney to buy real estate to be in writing. It seldom happens that the principal who signs the power retains, or has any written evidence signed by the agent, of his acceptance of the trust or agency. The requirement that the power shall be in writing, as was well said in the case of Smith vs. Kemper, 4 M. 409, is intended for the protection of the agent and not of the principal. In point of fact, the agent seldom signs or accepts the power in writing for any purpose, and it would be singular indeed if the principal should be allowed to prove the agency by a writing signed by himself alone, and which might be created by him at pleasure, and hot to do so by the testimony of witnesses and admissions and acts of the agent. On the other hand, it would be equally singular if, as is the uniform practice, the only written evidence of the agency or power should be delivered to and left in the hands of the agent, who might deny its existence at pleasure to accomplish his fraud, and thus conclude his principal from all proof of the agency, if his own acceptance and acts as agent could not be shown by the best evidence in existence as in other cases. In the case of Hall vs. Sprigg, 7 M. 244, it was held that a purchase of land in one’s own name, though with the money of another, and as his agent, may be shown by parol. In Smith vs Kemper, 4 M. 409, it was held that the defendant claiming to be plaintiff’s agent, who had bought land without the knowledge or authority of the latter in his name, can not defeat the sale till the plaintiff declare whether he accepts it or not, and that the plaintiff should recover the land. See, also, Giannoni vs. Gunny, 14 A. 632. In the case of Brice vs. Doyal, 10 A. 575, it was held that the principal might recover a slave purchased by his agent without written proof of his agent’s authority to buy, and the suit itself was held to be equivalent to an original mandate in due form. C. C. 2979. In Nolan vs. Shaw, 6 A. 40, it was held that an agent using money or property of his principal has no title. In Exchange Bank vs. Yorke, 4 A. 138, it was held that where an agent makes for himself a purchase he should make for his principal, the latter may take and the former must account for it. It is matter of every day experience that administrators, tutors, and other fiduciaries and agents, made so by law, can not use the funds of their principals to acquire property for themselves, or acquire for themselves the property under their control, and that those whose interests are sought to be thus affected have the option to claim either the property, whatever its character, or the price or damages. This is but carrying out the universally recognized principle that an agent shall not be allowed to profit by a violation of his own trust or to do any act which shall place his own interest in antagonism to those of his principal. I am aware that there are decisions of this court based solely upon the literal terms of the law requiring written evidence to affect title to real estate in *904 direct conflict with those views. I think that those decisions, however, are based upon too narrow a view of the law and a too literal application to cases like the present of general principles not so intended, and from the operation of which there is as much reason to except cases like the present as those of any other class involving fraud, error, or violations of trust. The decisions of other States and countries, and of the United States, teem with authority in consonance with the views for which I argue and which were, I think, properly recognized in the cases quoted, and especially in the earlier decisions of this court, to which as supported by right reason, and sound morals, I think we should recur. The works of highest general authority also, without exception, inculcate the same principles and doctrine. Indisposition has prevented my enforcing and elaborating my views on this important branch of the law as I would desire and had intended. I would reserve the right still to do so but that the condition of the docket and rapid approach of the close of the term of this court forbid it. For these reasons I dissent from the views of the majority of the court in this case, and think that it is one of the cases in which that “ necessity ” for a departure from the ordinary rule referred to by this .court in 6 A. 166 exists. See, also, 5 R. 20, and 26 A. 646. It is no more attempted here than in Hall vs. Sprigg, to contradict the written title, but to claim the benefit of it. If no written title bad been made, then the principle invoked by the defense would apply, but as it was made, the inquiry is, who is the real beneficiary under it. This, in a case of violation of his trust by the agent, we think may be shown by parol, as otherwise the grossest fraud would be protected by .resort to rules of law not intended to have that effect.